Charles E. McNeil
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
cemcneil@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, <br><br>     Plaintiff, <br><br>     v. <br><br> JK BUTTE LLC d/b/a BUTTE HOLIDAY INN EXPRESS, and FOX VALLEY CONTRACTORS, LLC, <br><br>     Defendants. | COMPLAINT FOR DECLARATORY JUDGMENT |

Now comes Plaintiff, Nautilus Insurance Company, by and through its attorney, Charles E. McNeil, of Garlington, Lohn & Robinson, PLLP, and for its Complaint for Declaratory Judgment against Defendants, JK Butte LLC d/b/a Butte Holiday Inn Express, and Fox Valley Contractors, LLC (collectively, the "Defendants"), it states as follows:

2038879

1

## THE PARTIES

1.     Nautilus Insurance Company ("Nautilus") is, and at all times relevant hereto was, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona.  At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Montana.

2.     At all times relevant hereto, JK Butte LLC d/b/a Butte Holiday Inn Express ("JK Butte") was a corporation organized under the laws of South Dakota with its principal place of business located in Aberdeen, South Dakota.  On information and belief, JK Butte is comprised of only a single member, John Koehler, who, at all relevant times hereto, was a citizen of South Dakota.

3.     At all times relevant hereto, Fox Valley Contractors LLC ("Fox Valley") was a corporation organized under the laws of Illinois with its principal place of business located in Batavia, Illinois.  Fox Valley is comprised of the following members:

a.     Peter Khoucher, who, at all relevant times hereto, was a citizen of Illinois.

b.     Peter Klyachenko, who, at all relevant times hereto, was a citizen of Illinois.

## JURISDICTION

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a)(1) in that the citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this litigation occurred in this judicial district.

## FACTS

6.      On or about March 30, 2016, JK Butte filed a Demand for Arbitration against Fox Valley ("Demand for Arbitration").  A copy of the Demand for Arbitration is attached hereto as Exhibit A and incorporated herein by reference.

7.      The Demand for Arbitration arises out of alleged construction defects in the exterior insulation finishing system ("EIFS") and stone work installed by Fox Valley at a Holiday Inn Express & Suites in Butte, Montana ("Holiday Inn"). Ex. A at 1.

8.      Fox Valley entered into a November 7, 2012 contract with JK Butte, whereby Fox Valley was to provide all materials, labor, and equipment necessary to complete EIFS and stone work for the Holiday Inn.  A copy of the "Contract for EIFS and Stone" is attached hereto as Exhibit B and incorporated herein by reference.

9.      In a February 15, 2016 letter to Fox Valley ("February 15 Letter"), JK

2038879

3

Butte alleges that Fox Valley's workmanship on the EIFS and stone work was faulty and resulted in serious defects.  A copy of the February 15 Letter is attached hereto as Exhibit C and incorporated herein by reference.

10.     In the February 15 Letter, JK Butte alleges that problems with the EIFS have been ongoing since before the Holiday Inn opened.  Ex. C.

11.     In the February 15 Letter, JK Butte further alleges that Fox Valley has "been on notice of [JK Butte's] Claims relating to these problems since early 2014 or earlier."  Ex. C.

12.     JK Butte further claims to have "had multiple phone conversations with [Fox Valley] and sent [Fox Valley] numerous emails, letters, extensive photographs and other documentation of the problems."  Ex. C.

13.     JK Butte also alleges that Peter Klyachenko (president of Fox Valley) met personally with JK Butte's designated representative in 2014 to inspect the problems at the hotel.  Ex. C.

14.     Per the February 15 Letter, Fox Valley initially appeared willing to remediate the problems with the EIFS and stone work on its own, but the letter states that "[a]fter almost two years, however, Fox Valley has failed to accept responsibility for its faulty [w]ork or commit to undertake correction of the problems."  Ex. C at 2.

15.     To evaluate the state of the EIFS and stone work, JK Butte allegedly

2038879

4

retained Cliff Kapson Consulting, Ltd. to conduct an inspection of the property. Ex. C at 2.

16.     In a 111-page report, Cliff Kapson Consulting, Ltd. found extensive flaws in the installation of the EIFS and stone, ultimately concluding that "the EIF system installation does not conform to the specified EIFS manufacturer's installation details and specifications, and/or project specific details and specifications."  A copy of the report ("Cliff Kapson Report") is attached hereto as Exhibit D and incorporated herein by reference.

17.     The Cliff Kapson Report indicated that "[t]his structure being only approximately 3 years old, has to this point suffered little impact from the moisture intrusion" caused by the faulty workmanship, but "[i]t is however, based on the improper installation details noted, believed to be early in the impact curve of a likely failure."  Ex. D at. 68.

18.     Per the Cliff Kapson Report, the faulty workmanship "can best be described as original construction defects . . . ."  Ex. D at 68.

19.     The Cliff Kapson Report indicated that "[o]wner would be well advised that this is a non-complying installation and without the correction of this installation, the performance of this exterior cladding certainly becomes questionable due to the imminent escalating failure, and problems which are likely to occur from the unsound practices utilized in the installation of the EIFS

cladding." Ex. D at 68.

20.     The Cliff Kapson Report recommended a full removal of the existing EIFS and a replacement with a properly-installed EIFS.  Ex. D at 68.

21.     The February 15 Letter asserts that, because Fox Valley has failed to correct its nonconforming work despite repeated requests to do so, JK Butte has considered exercising its right to hire another contractor to remove and replace Fox Valley's nonconforming work.  Ex. C at 2.

22.     A company called Interstate Plastering and Masonry, LLC has prepared a written proposal to demolish and reinstall the EIFS and stone for an estimated $798,848.00.  Ex. C at 3.

23.     JK Butte asserts that Fox Valley is liable for the $798,848.00 sum, as well as "additional losses, damages and extra expenses, including architects', engineering and consulting fees, additional management, administrative and other overhead and direct costs, lost room revenues and operating profits, and attorney fees and costs that may be incurred by [JK Butte] as a consequence of the defective Work." Ex. C at 3.

24.     On information and belief, most of these additional sums are speculative at present, with no evidence that JK Butte has, for example, lost room revenues or operating profits as a result of the alleged defects.

25.     A General Liability Notice of Occurrence/Claim, dated February 17,

2016, was received through the Gulbransen Insurance Agency.  A copy of the

General Liability Notice of Occurrence/Claim is attached hereto as Exhibit E and

incorporated herein by reference.

26.     The General Liability Notice of Occurrence/Claim was a third-party

claim by JK Butte.  Ex. E.

27.     In the Demand for Arbitration, JK Butte asserts claims for breach of

contract, breach of express and implied warranties, and negligence.  Ex. A at 1.

28.     The Demand for Arbitration further alleges damages for injury to JK

Butte's tangible property, including the loss of use thereof.  Ex. A at 1.

29.     The Demand for Arbitration also indicates that JK Butte is seeking

damages for the cost of all necessary corrective work, together with all other

losses, expenses, attorney's fees, and costs that may be incurred by JK Butte.  Ex.

A at 1.

30.     According to the Demand for Arbitration, this sum is expected to

exceed $800,000.  Ex. A at 1.

## THE NAUTILUS POLICIES

31.     Nautilus issued a commercial general liability insurance policy to Fox

Valley under policy number PN002900, for the policy period of March 9, 2012 to

March 9, 2013 (the "12-13 Policy").  A copy of the 12-13 Policy is attached hereto

as Exhibit F and incorporated herein by reference.

2038879                                                                          7

32.     Nautilus issued a second commercial general liability insurance policy to Fox Valley under policy number PN006084, for the period of March 9, 2013 to March 9, 2014 (the "13-14" Policy).  A copy of the 13-14 Policy is attached hereto as Exhibit G and incorporated herein by reference.  The 12-13 Policy and the 13-14 Policy are hereinafter referred to collectively as the "Policies."

**COUNT I**
**NO "PROPERTY DAMAGE"**

33.     Nautilus adopts and realleges the allegations in paragraphs 1 through 32 of its Complaint for Declaratory Judgment as paragraph 33 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

34.     The Nautilus Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

.   .   .

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we

will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**   The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

2038879

"bodily injury" or "property damage" during or
after the policy period will be deemed to have been
known prior to the policy period.

*See* Exs. F and G at 9.

35.    The Nautilus Policies define the term "property damage" as follows:

**SECTION V – DEFINITIONS**

.    .    .

**17.**    "Property damage" means:

  **a.**    Physical injury to tangible property, including all
          resulting loss of use of that property.  All such loss of use
          shall be deemed to occur at the time of the physical
          injury that caused it; or

  **b.**    Loss of use of tangible property that is not physically
          injured.  All such loss of use shall be deemed to occur at
          the time of the "occurrence" that caused it.

*See* Exs. F and G at 22-23.

36.    In the Demand for Arbitration and other communications with Fox

Valley, JK Butte alleges that Fox Valley failed to perform its EIFS and stone work

in a good and workmanlike manner because the Holiday Inn contains numerous

construction defects.  Exs. A, C.

37.    The Demand for Arbitration seeks damages from Fox Valley to repair

and/or replace its allegedly defective work.  Ex. A.

38.    At present, the dispute between JK Butte and Fox Valley relates to the

necessity of repairing or replacing the EIFS and stone work before any problems occur to property within the Holiday Inn.  Exs. A, C, D.

39.    The Nautilus Policies do not provide coverage for the Demand for Arbitration because it does not allege "property damage" as that term is defined in the Nautilus Policies.

40.    Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify it for any arbitration award or settlement entered in the arbitration.

41.    An actual controversy exists between Nautilus, JK Butte, and Fox Valley, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.    Find and declare that the Demand for Arbitration does not allege "property damage" as defined under the Nautilus Policies;

c.    Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify

2038879

11

Fox Valley for any arbitration award or settlement entered therein; and

    d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## NO "OCCURRENCE"

    42.    Nautilus adopts and realleges the allegations in paragraphs 1 through 41 of its Complaint for Declaratory Judgment as paragraph 42 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

    43.    The Nautilus Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

.   .   .

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We

may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*See* Exs. F and G at 9.

44.    The Nautilus Policies define the term "occurrence" as follows:

**SECTION V – DEFINITIONS**

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*See* Exs. F and G at 22.

45.    In the Demand for Arbitration and other communications with Fox Valley, JK Butte alleges that Fox Valley failed to perform its EIFS and stone work in a good and workmanlike manner because the Holiday Inn contains numerous construction defects.  Exs. A, C.

46.    The Demand for Arbitration seeks damages from Fox Valley to repair and/or replace its allegedly defective work.  Ex. A.

47.    The Nautilus Policies do not provide coverage for the Demand for Arbitration because it does not allege an "occurrence" as that term is defined in the Nautilus Policies.

48.    Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify it for any arbitration award or settlement entered in the arbitration.

49.    An actual controversy exists between Nautilus, JK Butte, and Fox

Valley, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that the Demand for Arbitration does not allege an "occurrence" as defined under the Nautilus Policies;

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify Fox Valley for any arbitration award or settlement entered therein; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## THE "EXTERIOR INSULATION AND FINISH SYSTEMS" EXCLUSION BARS COVERAGE

50.     Nautilus adopts and realleges the allegations in paragraphs 1 through 49 of its Complaint for Declaratory Judgment as paragraph 50 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

2038879                                                                                              15

51.    The Nautilus Policies contain the following exclusion:

**EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)**

This endorsement modifies insurance provided under the

following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage** and **Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.**    The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finishing system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.**    "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on that part of that structure containing that component, fixture or feature.

However, this exclusion does not apply to cementitious stucco consisting of portland cement or fiber-reinforced portland cement, sand, lime, color and water.

**B.**     The following definition is **added** to the **Definitions** Section:

"Exterior insulation and finish system" means a synthetic non-load bearing exterior cladding or finish system including, but not limited to, polymer based (PB) or polymer modified (PM) systems, and all component parts therein, used on any part of any structure, and consisting of:

**1.**     A rigid or semi-rigid insulation board made of expanded polystyrene and other materials; and

**2.**     The adhesive or mechanical fasteners used to attach the insulation board to the substrate; and

**3.**     A reinforced or unreinforced base coat; and

**4.**     A finish coat providing surface texture to which color may be added; and

**5.**     Any flashing, caulking or sealant used with the system for any purpose.

All other terms and conditions of this policy remain unchanged.

(hereinafter referred to as the "EIFS Exclusion").  *See* Exs. F and G at 33.

52.     In the Demand for Arbitration and other communications with Fox Valley, JK Butte explicitly alleges that Fox Valley failed to perform its EIFS work in a good and workmanlike manner because the Holiday Inn's EIFS contains numerous defects.  Exs. A, C.

53.     The Demand for Arbitration seeks damages from Fox Valley to repair and/or replace its allegedly defective work, including the defects in the EIFS.  Ex.

A.

54.    Even if the Demand for Arbitration alleged "property damage" caused by an "occurrence," which Nautilus expressly denies that it does, the EIFS exclusion bars coverage under the Nautilus Policies for any damages related to the Holiday Inn's EIFS.

55.    Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify it for any arbitration award or settlement entered in the arbitration.

56.    An actual controversy exists between Nautilus, JK Butte, and Fox Valley, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.    Find and declare that the EIFS Exclusion precludes coverage for the damages alleged in the Demand for Arbitration;

c.    Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify

Fox Valley for any arbitration award or settlement entered therein; and

d.      Grant Nautilus such other and further relief that the Court deems

proper under the facts and circumstances.

**COUNT IV**
**THE "BUSINESS RISK" EXCLUSIONS BAR COVERAGE**

57.     Nautilus adopts and realleges the allegations in paragraphs 1 through

56 of its Complaint for Declaratory Judgment as paragraph 57 of Count IV of its

Complaint for Declaratory Judgment as if fully set forth herein.

58.     The Nautilus Policies contain the following exclusions commonly

referred to as the "Business Risk" Exclusions:

**2.      Exclusions**

This insurance does not apply to:

.      .      .

**j.      Damage To Property**

"Property damage" to:

.      .      .

**(5)**     That particular part of real property on which you
or any contractors or subcontractors working
directly or indirectly on your behalf are performing
operations, if the "property damage" arises out of
those operations; or

**(6)**     That particular part of any property that must be
restored, repaired or replaced because "your work"

was incorrectly performed on it.

.   .   .

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been

2038879

20

put to its intended use.

*See* Exs. F and G at 12-13.

59.     The Nautilus Policies define the terms "impaired property,"

"products-completed operations hazard," "your product" and "your work" as

follows:

**SECTION V – DEFINITIONS**

.    .    .

**8.**     "Impaired Property" means tangible property, other than "your
product" or "your work," that cannot be used or is less useful
because:

    **a.**     It incorporates "your product" or "your work" that is
known or thought to be defective, deficient, inadequate
or dangerous; or

    **b.**     You have failed to fulfill the terms of a contract or
agreement;

if such property can be restored to use by:

    **a.**     The repair, replacement, adjustment or removal of "your
product" or "your work"; or

    **b.**     Your fulfilling the terms of the contract or agreement.

.    .    .

**16.**     "Products-completed operations hazard":

    **a.**     Includes all "bodily injury" or "property damage"
occurring away from premises you own or rent and
arising out of "your product" or "your work" except:

2038879                                                                                                   21

**(1)**     Products that are still in your physical possession; or

**(2)**     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

      **(a)**     When all of the work called for in your contract has been completed.

      **(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)**     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

.     .     .

**21.**     "Your product":

    **a.**     Means:

      **(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)**   You;

**(b)**   Others trading under your name; or

**(c)**   A person or organization whose business or assets you have acquired; and

**(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**   Includes

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**   The providing of or failure to provide warnings or instructions.

**c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

22.   "Your work":

**a.**   Means:

**(1)**   Work or operations performed by you or on your behalf; and

**(2)**   Materials, parts or equipment furnished in connection with such work or operations.

**b.**   Includes

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

2038879                                                                                                    23

> **(2)**   The providing of or failure to provide warnings or instructions.

*See* Exs. F and G at 20, 22-23.

60.    In the Demand for Arbitration and other communications with Fox Valley, JK Butte alleges that Fox Valley failed to perform its EIFS and stone work in a good and workmanlike manner because the Holiday Inn contains numerous construction defects.  Exs. A, C.

61.    The Demand for Arbitration seeks damages from Fox Valley to repair and/or replace its allegedly defective work.  Ex. A.

62.    Even if JK Butte alleged "property damage" caused by an "occurrence," which Nautilus expressly denies that it does, one or more of the foregoing "business risk exclusions" bars coverage for this matter.

63.    Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify it for any arbitration award or settlement entered in the arbitration.

64.    An actual controversy exists between Nautilus, JK Butte, and Fox Valley, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable

Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.      Find and declare that one or more of the "business risk exclusions" preclude coverage for the damages alleged in the Demand for Arbitration;

c.      Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Fox Valley against the Demand for Arbitration, or to indemnify Fox Valley for any arbitration award or settlement entered therein; and

d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

DATED this 25th day of July, 2016.


　　　　　　　　　　/s/  Charles E. McNeil
　　　　　　　　　　Attorneys for Plaintiff